JUAN ROSADO FUSSÁ, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE RÍO PIEDRAS, recurrido.

Núm. 1230.—*Sometido:* Abril 2, 1948. *Resuelto:* Abril 12, 1948.

*Ángel A. Vázquez*, abogado del recurrente; el·registrador recurrido compareció por escrito.

El Juez Asociado Señor Marrero emitió la opinión del tribunal.

Por escritura número 10 otorgada en 4 de marzo de 1942 los esposos Luis E. García y Josefa Carreras compraron a la Eastern Sugar Associates una finca compuesta de 195.99 cuerdas, de la cual 126.995 cuerdas radican en Trujillo Alto, de la circunscripción para aquel entonces del Registro de la Propiedad de San Juan, y 68.995 cuerdas en Caguas, dentro de la jurisdicción del Registro de la Propiedad del mismo nombre. De ella los citados esposos segregaron y vendieron a Felipe S. Vidal por escritura número 11, de igual fecha, una parcela de 97.995 cuerdas, que se describe bajo la letra A en; la escritura objeto de este recurso, de las cuales 68.995 cuerdas, más o menos, están situadas en Caguas y 29, más o menos, en Trujillo Alto. Ambas escrituras fueron·inscritas en los Registros de la Propiedad de Caguas y San Juan sin hacerse constar los linderos de la porción correspondiente a cada registro.

Por escritura número 244, otorgada en 17 de julio de 1944, ante el notario Angel A. Vázquez el adquirente Felipe S. Vidal agrupó la finca por él comprada a los esposos García Carreras con otra radicada en Caguas, que se describe bajo la letra B, quedando por virtud de esa agrupación formada una finca de 123.145 cuerdas, la cual se describe del siguiente modo bajo la. letra "E":

"E.—Rústica: Parcela de terreno radicada en los barrios San Antonio, de Caguas y Carraizo, de Trujillo Alto, compuesta de ciento veintitrés cuerdas ciento cuarenticinco céntimos de otra, equivalentes a cuarentiocho hectáreas cuarenta áreas, ocho centiáreas, de las cuales cuerdas radican en el municipio de Caguas NOVENTICUATRO CUERDAS CIENTO CUARENTICINCO CÉNTIMOS más o menos, y, en el municipio de Trujillo Alto, VEINTINUEVE CUERDAS más o menos; en lindes por el Norte, con Sotero Navarro, Vicente Lasanta, Sucesión de Domingo Flores y Ángel Munet; por el Sur, con el Río Grande de Loíza; por el Este, con Ángel Munet, y Manuel Díaz; y por el Oeste, con el Río Grande de Loíza, Felipe Velázquez y hoy Sucesión de Domingo Flores. Contiene dos casas terreras, de madera y techo de zinc, una para el mayordomo y otra para el peón y un establo de zinc, con piso de concreto, estando la finca cercada de alambre."

En la misma escritura de agrupación Felipe S. Vidal vendió la referida finca "E" al aquí recurrente Juan Rosado Fussá. Presentada para su inscripción la escritura número 244, el Registrador de Caguas inscribió la misma al folio y tomo que figuran al calce de ella, pero al presentarse la misma recientemente al Registrador de la Propiedad de Río Piedras, al cual corresponde en la actualidad el pueblo de Trujillo Alto, éste inscribió dicha finca, con el defecto subsanable de no describirse la parte de la finca que radica en el indicado pueblo de Trujillo Alto.

El recurrente sostiene que el Registrador de la Propiedad de Río Piedras erró al consignar en la inscripción de la finca agrupada y vendida bajo la letra "E" el defecto subsanable de no describirse la parte de dicha finca que radica en la demarcación de ese Registro.

De acuerdo con el artículo 1 de la Ley Hipotecaria "Si una finca estuviere situada en la circunscripción de dos o más registros, se inscribirá en todos ellos."

Ese mismo principio está consagrado en el artículo 23 del Reglamento, pero éste es aún más específico, pues no solamente dice que "Si alguna finca radicare en territorio perteneciente a dos o más registros, se hará la inscripción

en todos ellos," sí que también provee que se incluirá "en cada uno tan sólo la parte de la misma finca que en él estuviere situada."

Tanto el recurrente como el Registrador recurrido discuten con alguna amplitud el caso de *Solís* v. *Registrador*, 19 D.P.R. 1038. En ese caso se hipotecó una finca de 58 cuerdas, radicada parte en un municipio y parte en otro. El Registrador inscribió con el defecto subsanable de no describirse en el título la parte de la finca radicada en Caguas ni la parte situada en San Lorenzo, y de no distribuirse la cantidad de que respondía la totalidad de la finca por razón de la hipoteca, entre las dos porciones que constituyen la misma. Al resolver dicho caso este Tribunal manifestó que como se trataba de una sola finca, la hipoteca constituída la afectaba en su totalidad, no siendo aplicable lo preceptuado por el artículo 119 de la Ley Hipotecaria,[1] y que tampoco era necesaria la descripción en el título de las partes de las fincas situadas en cada municipio, siendo esos requisitos exigibles cuando la hipoteca se constituye sobre dos o más fincas distintas, mas no cuando afecta a una sola finca ubicada en dos distintos términos municipales. Empero, este Tribunal Supremo dijo allí con toda claridad que "en la primera inscripción de la finca de 58 cuerdas, hecha en el registro especial de cada uno de los pueblos de Caguas y San Lorenzo, tiene que constar la parte de dicha finca que radica en cada uno de los términos municipales expresados, con las referencias o menciones prevenidas por la ley." Esas referencias no pueden ser otras que las

---

[1] "Artículo 119.—(Según fué enmendado por la Ley número 62 de 21 de julio de 1923, leyes de 1923, sesión ordinaria, p. 407.)—Cuando se hipotequen varias fincas a la vez por un solo crédito, se determinará la cantidad o parte de gravamen de que cada una deba responder. Exceptuándose de lo anteriormente dispuesto las hipotecas que se constituyan en garantía de préstamos por agricultores para fines agrícolas, amortizables mediante pagos parciales anuales en un período de no menos de diez años e interés no mayor del siete por ciento, cuando los contratantes así lo estipulen."

especificadas en el artículo 9 de la Ley Hipotecaria, entre las cuales está la constancia de los linderos del inmueble objeto de la inscripción.

En *Malpica* v. *Registrador*, 21 D.P.R. 98, el Estado Español tenía inscrito en el Registro de la Propiedad de San Juan una finca de 400 cuerdas, radicada en la jurisdicción de Loíza, la que fué adquirida en subasta pública por Javier Zequeira, quien cedió sus derechos a Eugenio Malpica. El Estado otorgó entonces escritura de venta a favor de Malpica, haciéndose constar en el documento que al mensurarse nuevamente la finca ésta resultaba tener 419 cuerdas y 4,522 varas en vez de 400 cuerdas y que estaba situada en Loíza y Río Grande, no pudiendo apreciarse la porción de terreno correspondiente a cada municipio. El Registrador inscribió con el defecto subsanable de no describirse la porción radicada en cada término municipal. En el párrafo final de la opinión emitida se dice que "en cuanto al defecto subsanable consignado en la inscripción que se verificó en el libro de Loíza de que no se describía la porción radicada en cada término municipal, entendemos que el Registrador tuvo razón al estamparla toda vez que *los linderos y cabida son requisitos que deben constar en los asientos de inscripción de las fincas.*" (Bastardillas nuestras.)

Discutiendo una situación análoga a la aquí envuelta los tratadistas Galindo y Escosura en el tomo 1 de su obra sobre Legislación Hipotecaria nos dicen a la página 251 que: "... el art. 12 del Regt., al disponer que cuando el acto o contrato sujeto a inscripción se refiera a bienes que *deben* inscribirse en varios Registros, el Registrador lo remita *al que corresponda*,([2]) después de extender el asiento que en el suyo proceda, y el 17 al determinar que cuando una finca esté enclavada en dos o más Registros, se inscriba en cada

---

([2]) El párrafo 3 del artículo 57 del Reglamento para la Ejecución de la Ley Hipotecaria provee que cuando el acto o contrato se refiera a bienes situados en territorios de diferentes registros, el registrador remitirá de oficio al que corresponda el documento objeto de la inscripción.

uno la parte de aquélla que en él estuviere situada, desvanecen la vaguedad del párrafo que analizamos.'' Y acto seguido se expresan así: ''Resolvemos, pues, la duda, diciendo: *que cada finca ha de inscribirse en el Registro en cuya circunscripción esté sita; y si lo estuviere en dos o más, habrá de inscribirse en cada una la parte que corresponda.''* (Bastardillas nuestras.)

Sobre cuestión idéntica a la que está ante nos, el tratadista Martínez Moreda en sus Comentarios y Jurisprudencia a la Legislación Hipotecaria, edición de 1906, nos dice a la página 3: ''. . . . se infiere que la ley ha querido que la propiedad se inscriba en el Registro donde esté sita. Finalmente, el art. 17 en su segundo párrafo, resuelve la duda con más claridad al establecer que si alguna finca radicase en territorio perteneciente a dos o más Registros, se hará la inscripción en todos ellos, incluyendo *en cada uno tan sólo la parte de la misma finca que en él estuviese situada.''*[3]

■ Insiste además el recurrente en que la inscripción de las escrituras números 10 y 11 en los Registros de la Propiedad de Caguas y San Juan, sin que se hiciera constar en ellos los linderos de la porción de la finca que radica en la circunscripción de cada uno de esos Registros, creó un estado de derecho que obliga al recurrido. No hay tal cosa. Al calificar documentos sujetos a registro, los registradores no están facultados para apreciar la legalidad de los asientos extendidos en los registros por sus predecesores. *Hernández* v. *Registrador,* 67 D.P.R. 452, y casos citados a la página 463. Véanse también *Autoridad de Tierras* v. *Registrador,* 62 D.P.R. 506, 509; *Matos* v. *Registrador,* 61 D.P.R. 94, 96 y *López* v. *Registrador,* 58 D.P.R. 1, 5.

■ La falta de linderos no se considera motivo bastante para denegar la inscripción, siendo ése un defecto subsanable. Conforme dijimos en *Municipio de Salinas* v. *Regis-*

[3] El artículo 17 discutido por esos tratadistas es igual al 23 de nuestro Reglamento.

*trador,* 52 D.P.R. 80, 81: "Esta Corte Suprema ha resuelto en numerosas decisiones que los linderos y cabida de las fincas son requisitos esenciales que deben constar en los asientos de incripción que se practiquen en el registro de la propiedad y que el incumplimiento de esos requisitos es un defecto subsanable." En apoyo de ese aserto se citan varios casos de este Tribunal y el Volumen 2 de los Comentarios a la Legislación Hipotecaria de Morell y Terry, página 111.

Tanto a virtud de la letra clara de los artículos 1 de la Ley Hipotecaria y 23 del Reglamento, como de conformidad con las citas que hemos hecho de los casos de *Solís* v. *Registrador* y *Malpica* v. *Registrador,* supra, y de los tratadistas Galindo y Escosura y Martínez Moreda, llegamos a la conclusión de que en la escritura objeto del presente recurso han debido hacerse constar los linderos de las porciones que radican en Caguas y Trujillo Alto, a fin de que los registradores respectivos pudieran efectuar las debidas inscripciones. No basta con hacer una descripción general de la finca en su totalidad, con sus correspondientes linderos, ni que se diga el área de la porción que radica en cada uno de los respectivos registros. Es menester en estos casos no sólo hacer constar los linderos y el área de la totalidad de la finca, sino también especificar el área y los linderos de la porción de la finca que corresponda a cada registro.

*Debe confirmarse la nota recurrida.*